

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VERNON BLAIR | CIVIL ACTION |
| versus | NO: 00-0269 |
| BARRY GRAHAM OIL SERVICE, L.L.C. | MAGISTRATE: 1 SECTION "K" |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## PRE-TRIAL ORDER

1.

### DATE OF PRE-TRIAL CONFERENCE

The Pre-Trial Conference was held on February 1, 2001, at 1:00 p.m. before the Honorable Stanwood R. Duval, Jr., United States District Judge for the Eastern District of Louisiana.

2.

### APPEARANCE OF COUNSEL

David A. Hilleren, T.A.
Billy Wright Hilleren
Post Office Box 9150
Mandeville, Louisiana 70434-9150
(504) 893-5959
Attorney for Plaintiff, Vernon Blair

NO:99154853.1          Page -1-

DATE OF ENTRY
FEB 0 7 2001

George M. Gilly, T.A.
Thomas Kent Morrison
Phelps Dunbar, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311
Attorneys for defendant, Barry Graham Oil Service, L.L.C.

3.

### DESCRIPTION OF THE PARTIES

Plaintiff, Vernon Blair, at all times pertinent herein, was a Jones Act seaman employed by defendant, Barry Graham Oil Service, L.L.C., aboard the M/V JOSEPH.

Barry Graham Oil Service, L.L.C. is an Alabama limited liability company.

4.

### JURISDICTION AND SUMMARY OF FACTUAL BASIS

Jurisdiction herein exists under the Jones Act and the General Maritime Law.

5.

### PENDING MOTIONS

None.

6.

### MATERIAL FACTS

a. **Plaintiff:**

On or about December 3, 1998, at 1730 hours, the M/V JOSEPH, on which Vernon Blair was serving as a deckhand/engineer, was located at EIC 13-A in the Gulf of Mexico. Seas were

running from the south at up to 15 feet with wind speed of 20-30 knots. The vessel was tied by a line from its bow to the rig. The captain at the wheel, Victor Lind, made the decision to voluntarily break the line because he observed it in a frayed condition. He then ordered plaintiff, Vernon Blair, together with the second captain, John Ferrouillat, to retrieve the line, cut out the frayed section, and splice it. It was then necessary to pull the line back to the stern so that the vessel could back toward the rig and attempt to reconnect the line from the vessel to the rig. With plaintiff pulling the line down the port side of the vessel toward the stern, the captain swung the stern of the vessel into the heavy seas and began backing the M/V JOSEPH toward the rig. A large wave, perhaps as large as 18 feet, came over the stern and knocked down Vernon Blair. A second wave followed, sweeping him to the front of the vessel. At the time of the accident, the M/V JOSEPH, according to its logs, had been waiting on weather for 2-3 days which required this dangerous maneuver to be performed under extreme conditions. Furthermore, the captain turned the vessel with its stern to the seas at an excessive distance from the rig. One of defendant's other captains has testified that he would have turned the vessel much closer to the rig, thereby gaining the protection of the rig with respect to the seas. Finally, plaintiff was ordered into an exposed position on the stern of the vessel when he could have stayed close to the cabin until the vessel was close enough to the rig to connect the line to the rig. Plaintiff protested doing the work under these conditions, but was told to proceed anyway.

Following the accident, an accident report was completed. Plaintiff did not obtain medical attention until January, 2000, because he was under financial pressure to continue to work and because he did not understand the employer's obligation to provide free medical care

for seaman disabled in the service of the vessel. Following the accident, plaintiff, Vernon Blair, was harassed by one of the captains and, finally, had a confrontation after which his employment was terminated. Vernon Blair was subsequently sent to a neurologist, Dr. William S. Fleet, in Mobile, Alabama, for treatment. Dr. Fleet diagnosed Mr. Blair as having lumbar radiculitis, cervical radiculitis and insomnia. Mr. Blair was sent for an MRI of the cervical and lumbar spine by Dr. Charles Aprill. The MRI of the cervical spine demonstrated spondylosis with a broad-based posterior disc bulge at C4-5 and posterior bulge with end plate ridge formation at C6-7. The lumbar MRI drew attention to minimal maturation/degeneration changes at L4-5. Vernon Blair has been followed through the present by Dr. Fleet, who has indicated that Mr. Blair will probably have a 20% whole body impairment with 10% attributable to the back and 10% attributable to the neck on a permanent basis. Mr. Blair's permanent limitations will consist of no greater lifting than 25 pounds, bending only occasionally, squatting only occasionally, sitting for up to one hour, standing up to one-half hour, and only occasional twisting. Dr. Fleet has indicated that there is a 50% chance of a percutaneous discectomy which would involve $13,500.00 in cost. Dr. Steiner has examined Mr. Blair on May 23. Dr. Steiner noted degenerative changes in the cervical and lumbar spine and indicated that conservative treatment was most appropriate for Mr. Blair.

Using a base of $17,802.00, plaintiff's economist has projected an earnings loss of $195,406.00 if total disability is assumed and $77,827.00 if Mr. Blair is able to work at legal minimum wage. Dr. Kenneth Boudreaux, defendant's economist, using an earnings base of

$15,905.00 indicates that Mr. Blair will lose from $35,000.00 to $38,000.00 net of minimum wage.

With respect to medical bills, a summary judgment was granted by this Honorable Court directing defendant to pay Mr. Blair's medical bills. Medical bills have been and are being submitted and defendant has been paying medical bills.

b.  **Defendant:**

In general, Barry Graham Oil Service, L.L.C. contends that plaintiff, Vernon Blair, did not suffer injury and damages as alleged and, alternatively, that his alleged injuries and damages were in no way caused by the negligence of a party or parties for whom Barry Graham Oil Service, L.L.C. may be held responsible, but instead were caused solely by and/or contributed to and/or aggravated by plaintiff's pre-existing condition, negligence and fault and/or the negligence of another party or parties for whom Barry Graham Oil Service, L.L.C. may not be held responsible and/or an Act of God, a fortuitous event and/or an unavoidable accident, for none of which plaintiff may have recovery herein against Barry Graham Oil Service, L.L.C.

Plaintiff is a 5'11", 242 lb., 52 year old, who attended high school until the twelfth grade, has no marine licenses, and flunked the 100 ton operator's license exam in the late 70's. He has an extensive work history as an automobile mechanic and as a deckhand/unlicensed engineer for various boat companies in the oil patch, and the longest he ever worked for any one employer was 2-3 years. In recent years, during time off from vessel work, he restored and sold cars and trucks but did not report the income from those efforts.

Plaintiff began working for Barry Graham Oil Service, L.L.C. in August 1999, and the accident occurred on December 3, 1999. The accident was caused by a "rogue" wave, and the only eyewitness, Capt. John Ferrouillat, recalls plaintiff being washed off his feet rather than having a towering wave knock plaintiff down from above, as plaintiff claims. Capt. Ferrouillat also denies plaintiff's contention that plaintiff was driven back by the force of the water or thrown into any cargo on deck. Capt. Ferrouillat further testified that plaintiff quickly regained his composure, helped complete the job at hand, and did not complain of injury or exhibit any signs of injury.

Plaintiff worked without difficulty the remaining four days of the accident hitch, returned to his home for his scheduled week off, and did not see a doctor during that week. He then returned to work for another complete 14 day hitch, followed by another seven days on shore, and then began a third 14 day hitch on January 5, 2000. Though he contends that he worked with difficulties during this time, such is not substantiated by those with whom he worked and he saw no doctors.

On January 10, 2000, plaintiff's employment with Barry Graham Oil Service, L.L.C. was terminated because of an incident in which he verbally accosted and physically threatened Capt. Alex Seaman. After being put off the boat, plaintiff reported to Barry Graham Oil Service, L.L.C.'s customer that Capt. Seaman and others on the MR. JOSEPH had been stealing the customer's groceries. That charge was untrue, and Barry Graham Oil Service, L.L.C. continues to work for that customer.

In his deposition, plaintiff acknowledged that he left Barry Graham Oil Service, L.L.C.'s employ not because of injuries but instead because he was fired. Plaintiff further admitted that he saw no doctors until late January 2000 when his attorney sent him to neurologist William Fleet in Mobile.

Based on lumbar MRI's and cervical MRI's revealing disc bulges at C4-5 and C6-7, which are normal for one of plaintiff's age and obesity, Dr. Fleet has treated plaintiff conservatively with numerous medications. No surgery has been recommended.

Orthopedic surgeon Robert Steiner examined plaintiff and concluded that his cervical and lumbar spine exhibited signs of degenerative changes which pre-existed the incident.

7.

## UNCONTESTED MATERIAL FACTS

1.  At all times pertinent herein, defendant employed plaintiff aboard the M/V JOSEPH.

2.  At all times pertinent herein, the M/V JOSEPH was owned and operated by defendant.

3.  At all times pertinent herein, the M/V JOSEPH was a vessel in navigation upon the navigable waters of the United States.

4.  Plaintiff, Vernon Blair, was a seaman and member of the crew of the M/V JOSEPH.

5. The first medical attention plaintiff obtained was after plaintiff's employment termination, and was provided by Dr. William Fleet in late January upon referral by plaintiff's counsel.

8.

## CONTESTED ISSUES OF FACT

1. Whether defendant was negligent as follows:

   a. In breaking, replacing, and attempting to reconnect its line under extreme weather conditions.

   b. In turning the vessel's stern to the seas and backing into the seas at an excessive distance from the rig.

   c. In ordering or allowing plaintiff to work in an exposed position on the stern deck instead of allowing him to remain close to the forward structure of the vessel until it was close to the rig.

   d. In failure to provide plaintiff with a safe place to work.

   e. In overruling plaintiff's protest about working under the dangerous conditions present.

   f. In failure to provide plaintiff with medical attention after the incident, thereby worsening his condition.

   g. In failure to warn of dangers present.

   h. Other acts of negligence which shall be shown at the trial hereof.

2. Whether defendant's vessel was seaworthy in causing plaintiff's injuries as follows:

   a. In failure to provide an adequate and competent crew.

   b. In failure to provide proper equipment for the vessel to perform its mission.

3. The nature and extent of plaintiff's damages.

4. Whether plaintiff has experienced and will continue to experience pain and suffering, mental anguish, loss of life's pleasures, loss of earnings, and medical expense.

5. Whether plaintiff remains disabled from his accident aboard the M/V JOSEPH.

6. The value of equipment, board, and lodging to that provided by the M/V JOSEPH.

7. Whether plaintiff has reached maximum medical cure.

8. The nature and extent of defendant's cure obligation.

9. Whether plaintiff is due medical expenses, costs and penalties for failure of defendant to pay all of his recommended medical costs.

10. Whether plaintiff's condition has been worsened by defendant's failure to pay and authorize recommended medical treatment.

11. Whether plaintiff had an accident on the M/V JOSEPH, as he now alleges.

12. Whether the accident occurred or, if it occurred, whether it occurred as plaintiff alleges.

13. Whether the accident was caused by a "rogue" wave or Act of God, for which no one is responsible.

14. Whether plaintiff suffered any injury in the alleged accident.

15. Medical causation.

16. The nature and extent of plaintiff's injuries, if any.

17. Plaintiff's damages, if any.

18. Whether plaintiff's alleged injuries were caused by a pre-existing condition and/or prior and subsequent accidents, and the effects of plaintiff's obesity.

19. Whether plaintiff has failed to mitigate his alleged damages.

20. Limitation of liability and entitlement.

21. Whether plaintiff did not leave the employ of Barry Graham Oil Service, L.L.C. because of injuries but instead because he was fired on January 10, 2000.

22. ~~All issues of fact implicit in the issues of law below.~~

9.

## CONTESTED ISSUES OF LAW

~~All issues of law implicit in the foregoing issues of fact.~~

10.

## DESCRIPTION OF EXHIBITS

**Plaintiff:**

23. Accident report.

24. Logs of the vessel.

25. Personnel records.

26. Diagram of the vessel.

27. Plaintiff's personnel log.

28. W-2 forms, tax returns, and earnings records of plaintiff.

29. Social Security records.

30. Records of Dr. William S. Fleet.

31. MRI records of Magnolia Diagnostic.

32. Medical bills.

33. Documentation of plaintiff's expenses for lodging, food and other necessities.

34. Any exhibit listed or used by any other party.

**Defendant:**

1. Records from Magnolia Diagnostics;

2. Barry Graham Oil Service, L.L.C. Accident or injury Report for Vernon Blair;

3. Medical records of Singing River Hospital;

4. Records of Diagnostic Management Affiliates, L.L.C.;

5. Records of Dr. William Fleet;

6. Barry Graham Oil Service, L.L.C. records regarding COBRA benefits;

7. General arrangement plan for the M/V MR. JOSEPH;

8. Personnel records, including termination materials, for Vernon Blair;

9. Safety program for Barry Graham Oil Service;

10. Medical records of Dr. Robert Steiner;

11. Vessel logs for the M/V MR. JOSEPH;

12. Expert economist report of Ken Boudreaux;

13. Surveillance video of Vernon Blair;

14. Any document produced in response to discovery requests; and,

15. Any exhibit listed by any other party.

11.

## DEPOSITION TESTIMONY

Plaintiff will offer the video tape deposition of Dr. William S. Fleet. Plaintiff will also use the deposition of crew members whose depositions have been taken if the crew members are beyond the subpoena power or will not be voluntarily produced by defendant.

Defendant reserves the right to introduce the deposition testimony of witnesses unavailable at the time of trial.

12.

## DESCRIPTION OF CHARTS, GRAPHS, MODELS, SCHEMATIC DIAGRAMS

Plaintiff will use charts, graphs, models, and/or schematic diagrams, in his opening and closing statements.

Defendant may wish to use a blackboard, photographs, diagrams or sketches in connection with opening statement, witness interrogation and/or closing argument.

13.

## LIST OF WITNESSES

**Plaintiff:**

1. Vernon Blair. *will call*

2. Maria Blair, wife of the plaintiff. *will call*

3. Victor Lind.

4. Alex Seaman. *will call*

5. Capt. of the M/V JOSEPH.

6. John Ferrouillat.

7. Dr. William S. Fleet, Neurologist. *will call*

8. Dr. Semoon Chang, Economist. *will call*

9. Dr. Charles Aprill, Radiologist.

10. Barry Graham.

11. Any witness listed or called by any other party.

**Defendant:**

Witnesses who <u>may</u> be called by Barry Graham Oil Service, L.L.C..:

1. Vernon Blair

2. Dr. William Fleet

3. Vic Lind - *will call*

4. Alex Seamann *will call*

5. John Ferrouillat *will call*

6. Charles Kendrick

7. Herbert Armstrong

8. Mike Harris

9.  Kenneth Boudreaux, Ph.D.

10. Dr. Robert A. Steiner

11. Gilbert Seamann

12. Barry Graham

13. David Cook

14. Any witness listed, called or attempted to be called by plaintiff.

15. Any witness listed, called or attempted to be called by any other party.

14.

## JURY OR NON-JURY CASE

This matter will be tried before a jury.

15.

The issue of liability (will) or (will not) be tried separately from that of quantum.

16.

## ANY OTHER MATTERS THAT MIGHT EXPEDITE DISPOSITION

A settlement conference is scheduled with Magistrate Judge Sally Shushan for February 14, 2001.

17.

Trial shall commence on February 20, 2001, at 8:30 a.m. and will last two days.

18.

This Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel

for corrections, or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by Order of the Court to prevent manifest injustice."

19.

Possibility of settlement of this case was considered.

| | |
|---|---|
| David A. Hilleren, T.A. (6921)<br>Post Office Box 9150<br>Mandeville, Louisiana 70434-9150<br>(504) 893-5959<br>Attorney for Plaintiff,<br>Vernon Blair | George M. Gilly, T. A. (6234)<br>Thomas Kent Morrison (25802)<br>Canal Place<br>365 Canal Street, Suite 2000<br>New Orleans, LA 70130<br>(504) 566-1311<br>Attorneys for Barry Graham<br>Oil Service, L.L.C. |

Billy Wright Hilleren

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

✱ Subject to a
Minute Entry
of the same date

for corrections, or additions, prior to signing. Hereafter, this Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by Order of the Court to prevent manifest injustice."

19.

Possibility of settlement of this case was considered.

/s/ David A. Hilleren
David A. Hilleren, T.A. (6921)
Post Office Box 9150
Mandeville, Louisiana 70434-9150
(504) 893-5959
Attorney for Plaintiff,
Vernon Blair

George M. Gilly, T.A. (6234)
Thomas Kent Morrison (25802)
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
(504) 566-1311
Attorneys for Barry Graham
Oil Service, L.L.C.

Billy Wright Hilleren

/s/ Stanwood R. Duval, Jr.
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE